No. 792. BIRNBAUM v. UNITED STATES. C. A. 2d Cir. Certiorari denied. MR. JUSTICE MARSHALL took no part in the consideration or decision of this petition. *Harold F. Reis, Edward P. Taptich,* and *Alan M. Dershowitz* for petitioner. *Solicitor General Griswold, Assistant Attorney General Vinson, Beatrice Rosenberg,* and *Edward Fenig* for the United States. *William J. vanden Heuvel* and *Charles G. Moerdler* for St. Augustine's Episcopal School et al. as *amici curiae* in support of the petition.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE DOUGLAS joins, dissenting.

This case raises troublesome issues concerning the federal sentencing process and its impact on the exercise of appellate rights, issues I believe we should confront because of our duty both to enforce specific congressional commands and to exercise our supervisory power over the lower federal courts.

The sentencing problems involved here arose after petitioner was convicted in the United States District Court for the Southern District of New York on two counts charging him with having conspired with others to bribe, and with having bribed, an Internal Revenue Agent. At the sentencing hearing, the District Judge noted that petitioner, who continued to maintain his innocence, was appealing his conviction; the judge therefore declined at that time to explore the relevant aspects of petitioner's character that might be taken into con-

sideration in imposing a final sentence. Instead, the District Judge imposed a "tentative," "for the present" sentence of one year, promising to reconsider the sentence after appeal and stating that he "might" grant probation if certain conditions were adequately fulfilled. The District Judge explained his imposition of the "tentative" sentence as follows:

> "However, now is not the time to explore that phase [*i. e.,* the 'factors that might be considered in mitigation of sentence'], for you have not accepted the jury's verdict and faced up to its import. You protest your innocence and you are on the way to appeal. Certainly that is your legal right.

> "For the present, then, in the light of your frame of mind, let me just add that if your conviction is sustained, this Court might, and I emphasize might, upon an impressively convincing showing that you have realized, or rather realigned your sights and devoutly wish to give a hunk of yourself as well as your wealth to doing with constancy those acts which will really help your fellow Americans and at the same time enhance your personal well-being immeasurably, I say this Court might consider . . . a program of rehabilitation without confinement . . . ."

Interpreting the District Court's comments to mean that probation would be granted if the court's suggestions were followed, petitioner requested advice as to his proper course of action from a New York State judge, who had been referred to in the District Court's sentencing remarks as a person who "still believed in" petitioner. The state judge, in turn, contacted the District Judge, informing him that petitioner was having difficulty understanding how to comply with the sentencing suggestions. The District Judge responded: "Why don't you guide him? You have had a great deal of experience

in charitable endeavors. . . . If you want to help him, why don't you act as his unofficial probation officer . . . ?" Agreeing to do so, the state judge introduced petitioner to three New York charities, the list of which the District Judge approved. For the following 18 months, petitioner became deeply involved with the three suggested charities and others as well, contributing a great deal of his time and over $100,000 in personal funds. When the state judge reported to the District Judge at an informal social occasion how well petitioner was progressing, the District Judge replied, "That's good, that's fine."

When petitioner's case was argued on appeal to the Court of Appeals for the Second Circuit, his counsel made some strong attacks on the District Judge's conduct of the trial and his comments and instructions to the jury. After the conviction was affirmed, petitioner moved for reduction and suspension of the tentative one-year sentence under Rule 35 of the Federal Rules of Criminal Procedure, arguing that he had fully complied with the suggested conditions. After "long and careful consideration" and "reflection seemingly without end," however, the District Court declined to reduce the original sentence. Another district judge then denied an application for probation by way of a writ of *coram nobis*. These rulings, denying the writ and the Rule 35 motion, were consolidated and affirmed on appeal to the Court of Appeals.

Certiorari should be granted, I believe, for two reasons that are inescapably clear from this record: (1) the District Judge's imposition of a "tentative" sentence clearly violated the principle, inherent in 18 U. S. C. § 4208 (b) and our decisions dealing with that statute, that a defendant must be given the option of waiting until the tentative sentence becomes final before appealing his conviction; (2) the District Judge's refusal to suspend

sentence, after petitioner fully complied with the conditions laid down for such suspension, is inconsistent "with that regularity and fairness which should characterize the administration of criminal justice in the federal courts." *Saldana* v. *United States,* 365 U. S. 646, 647 (1961).

## I.

I think it implicit in our rulings in *United States* v. *Behrens,* 375 U. S. 162 (1963), and the companion case of *Corey* v. *United States,* 375 U. S. 169 (1963), that a trial court's sentence must be final in every respect before an appeal need be taken, and that a district judge may impose a tentative sentence only if he follows the limitations and safeguards of 18 U. S. C. § 4208 (b). Section 4208 (b) specifically provides that a trial judge can impose a temporary sentence which *"postpones* action as to the final sentence" for the purpose of obtaining more detailed sentencing information, *United States* v. *Behrens, supra,* at 165. But we have ruled that if a trial judge proceeds under this statute, the defendant, once informed of the trial judge's intention to do so, can choose to note his appeal *either* at the time the temporary sentence is imposed (to take immediate advantage, for instance, of bail rights), *or* after the final sentence is imposed, *Corey* v. *United States, supra,* at 175. One of the reasons for allowing the defendant the discretion to defer the appellate decision until final action is taken at the trial level was pointed out in *Corey* v. *United States, supra,* at 175, and is particularly applicable here in view of petitioner's virulent attacks on the trial judge on appeal: "[A] defendant might think, rightly or wrongly, that the trial court's knowledge that an appeal had already been taken might adversely influence the court's discretion in imposing final sentence." Such a worry on a defendant's part might well inhibit him from exercising his appellate rights altogether, or

from making certain arguments once he has decided to take an appeal.

It is no answer to say that petitioner acted precipitately in going ahead with his projected appeal after the trial court imposed its "for the present" sentence, for the court indicated that it had no intention of making a final decision until after the appeal was concluded, thereby depriving petitioner of his option under § 4208 (b). As it was, petitioner had cause to believe that he had been given conditional probation, a "final" sentence that would stand if he followed the conditions, and that he had better appeal then or be out of time before the Court of Appeals. Certainly the record is fairly susceptible of such an interpretation, and surely petitioner was entitled to the protection afforded by § 4208—that exercise of appellate rights would not result in a heavier, prison sentence. And even if the trial court's remarks are interpreted, at the other extreme, as imposing a one-year prison term, surely petitioner should have to serve only that sentence, without the added restraints imposed on his time during the 18 months while the appeal was pending.

Thus, no matter how the District Judge's sentencing remarks are interpreted, he exceeded his authority under § 4208 (b). If the District Judge was imposing conditional probation, he erred in revoking the probation after petitioner had fully complied with its terms; and if the District Judge was imposing a one-year prison term, he had no authority to extract, in addition, a lengthy period of probation. Moreover, as I have noted above, petitioner was justified in making the first interpretation. He was equally justified, I think, in viewing that interpretation as final to the extent that probation would be withheld only if petitioner did not comply with the conditions, and not if the District Judge happened to change

his mind for reasons known only to him and based either on factors of which he was aware all along or on the nature of petitioner's appeal. For it is clear that the District Judge had before him all the necessary sentencing information, which he should have explored at the time; he therefore did not need to resort to the temporary sentencing device to obtain "more detailed information"—the "whole point of using section 4208 (b)," *United States* v. *Behrens, supra,* at 165. The charitable device used here instead to test out petitioner's rehabilitation is simply not within the purview of § 4208 (b).

## II.

The District Court's "wait and see" charitable experiment was not just a violation of rules and statutes, however; it was also, in my view, a serious departure from accepted judicial behavior, the second reason why I believe certiorari should be granted. In *Saldana* v. *United States, supra,* the trial judge promised the petitioner a five-year sentence if he testified at a later trial of a co-indictee without at the same time trying to assume responsibility for a number of offenses, thereby absolving the other defendant; the second trial was never held, however, because the defendant became a fugitive, and petitioner was sentenced finally by another judge to 20 years. At the suggestion of the Solicitor General, and after an independent examination of the record, we concluded that a "due regard for the fair administration of justice" required a reversal of three counts of a five-count indictment. I think the circumstances of this case demand at least that the trial court's promise be kept and that the prison sentence be reduced to one year's probation. I cannot accept the Government's effort to distinguish *Saldana* on the grounds that the "promise" there was unequivocal, while here the trial court indicated only that it "might" reconsider the sentence.

Given his situation, petitioner had no choice but to treat the trial court's remarks as a promise and then proceed, as he did, to comply with its conditions. I cannot believe that anyone, including the District Judge who approved the manner of compliance, could expect petitioner to follow a different course of action.

The impropriety of this sentencing procedure rests not on the fact that the punishment was disproportionate to the offense because it was not. The crime could have supported a punishment greater than that accorded. Cf. *Saldana, supra.* The impropriety of the sentencing procedure rests instead on the fact that the petitioner's meaningful right of appeal was prejudiced, and that he was led to believe that if he contributed to certain charities approved by the judge, he would not be imprisoned, and that after contributing $100,000 and 18 months of personal service to them, he was told unceremoniously that his efforts were of no avail. This was neither in keeping with the statutory procedure nor with the fairness of the judicial process.

For these reasons, I would grant certiorari and, in the absence of any justification on briefing and oral argument, I would reverse the judgment.